UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LIANA RUTH WHITTINGTON,<br><br>                              Plaintiff,<br>     v.<br>NANCY A. BERRYHILL,<br>Acting Commissioner of<br>Social Security Administration,<br><br>                              Defendant. | Case No. 3:16-cv-00534-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF**<br>**U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 11.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF Nos. 12/13.) Plaintiff filed a reply. (ECF No. 14.)

After a thorough review, the court recommends that Plaintiff's motion be denied, and that the Commissioner's cross-motion be granted.

## I. BACKGROUND

Plaintiff completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning February 1, 2007. (Administrative Record (AR) 83, 148-49.) The application was denied initially and on reconsideration. (AR 99-104, 106-111.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 113.) ALJ Sara Gilles held a hearing on January 27, 2015. (AR 39-70.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a

vocational expert (VE). On April 13, 2015, the ALJ issued a decision finding Plaintiff not disabled. (AR 20-35.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-4, 15-16.)

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ failed to properly evaluate Plaintiff's service connected disability; (2) the bookkeeping occupation identified by the VE has a specific vocational preparation (SVP) of 4 under the Dictionary of Occupational Titles (DOT), but the VE said that the Department of Labor and Bureau of Labor Statistics (BLS) characterized the occupation as unskilled without identifying the specific publication or statistics she relied on to render her testimony, and the VE's testimony was not supported by published data; (3) Plaintiff was limited to sedentary work and the mail clerk occupation identified by the VE is characterized by the DOT as light work, and while the VE indicated that the BLS characterized this occupation as sedentary, she did not indicate what publication she relied upon; (4) the VE characterized the office helper occupation as sedentary, and while the DOT characterizes it as light work, the ALJ failed to recognize this conflict.

## II. STANDARD OF REVIEW

### A. Substantial Evidence

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's

impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.*

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.*; 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national

economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); see also Lockwood, 616 F.3d at 1071; Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).

### III. DISCUSSION

#### A. ALJ's Findings in this Case

At step one, the ALJ found Plaintiff met the insured status requirements on March 31, 2010, and had not engaged in substantial gainful activity from the alleged onset date of February 1, 2007 through the date last insured of March 31, 2010. (AR 22.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: lower back strain, obesity, anxiety disorder, mood disorder, and personality disorder. (AR 22-23.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR23-26.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she could understand remember and carry out simple job instructions; she could maintain concentration, persistence, and pace for simple job tasks; she could occasionally interact with the public; and, she could interact appropriately with co-workers and supervisors. (AR 26-32.) The ALJ then found Plaintiff could not perform any of her past relevant work. (AR 32-33.)

At step five, the ALJ considered Plaintiff's age, her education, work experience and RFC, and relying on the VE's testimony, concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, including: bookkeeping clerk (DOT 214.362-042); mail clerk (DOT 209.687-026); and office helper (DOT 239.567-010). (AR 33-34.)

#### B. VA Disability Rating

##### 1. Summary of Argument

Plaintiff argues that the ALJ must give persuasive, specific, valid reasons for giving less

|   |   |
|---|---|
| 1 | weight to the VE rating, and here the ALJ failed to do so. (ECF No. 11 at 6-10.) |
| 2 |       The Commissioner contends that the ALJ specifically stated that she considered the VA's |
| 3 | disability rating in rendering her decision. (ECF Nos. 12/13 at 5.) In addition, the Commissioner |

weight to the VE rating, and here the ALJ failed to do so. (ECF No. 11 at 6-10.)

    The Commissioner contends that the ALJ specifically stated that she considered the VA's disability rating in rendering her decision. (ECF Nos. 12/13 at 5.) In addition, the Commissioner notes that the ALJ credited Plaintiff's complaints of mental limitations including her claims she had difficulty concentrating and being around others. (*Id.* citing AR 25, 57-65.) The ALJ also explained that the evidence showed that while Plaintiff's mental functioning was limited, she was able to perform the highly restrictive range of work set forth in her RFC (simple instructions with occasional interaction with the public). and her activities of daily living showed she was capable of performing the activities set forth in her RFC. (*Id.* at 5-6.) Finally, the ALJ indicated that clinical findings were inconsistent with disabling mental limitations. (*Id.* at 6.)

**2. The ALJ's Findings**

    The ALJ noted the VA had rated Plaintiff at 100 percent for service connected disability. (AR 32.) The ALJ then stated that the standard to determine VA disability rating is not the same as the rules and regulations governing the Social Security disability process but, she had nevertheless considered the VA disability rating in rendering her decision. (AR 32.)

**3. Analysis**

    In *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002), the Ninth Circuit addressed, as a matter of first impression, the evidentiary significance of a VA disability rating, and held, like other circuits, "that although a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision." *McCartey*, 298 F.3d at 1076. The Ninth Circuit concluded that "an ALJ must ordinarily give great weight to a VA determination of disability." *Id.* Nevertheless, "[b]ecause the VA and SSA criteria for determining disability are not identical ... the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (citation omitted).

    In *Valentine v. Commissioner of Social Security Administration*, 574 F.3d 685 (9th Cir. 2009), the 9th Circuit stated that "[i]nsofar as the ALJ distinguished the VA's disability rating on the ground that the VA and SSA disability inquiries are different, her analysis fell afoul of

*McCartey*." *Valentine*, 574 F.3d at 695. Despite this error, the Ninth Circuit found that the ALJ did assert a valid reason for giving less weight to the VA's disability rating. The ALJ stated that the VA determination "'was not based on a comprehensive evaluation of the evidence available," which appeared in the same paragraph where the ALJ justified her decision to discredit the opinion of one of the doctors. *Id.* The Ninth Circuit also noted that "the ALJ benefitted from the opinions of the agency psychologists, evidence of Valentine's work history and post-retirement activities, and the input of the vocational expert." *Id.* As such, the court concluded that "[t]he ALJ was justified in rejecting the VA's disability rating on the basis that she had evidence the VA did not, which undermined the evidence the VA did have" and this constituted a persuasive, specific and valid reason supported by the record for according little weight to the VA disability rating. *Id.*

In *Berry v. Astrue*, 622 F.3d 1228 (9th Cir. 2010), the Ninth Circuit reiterated that it was not sufficient for the ALJ to note that the Social Security Administration is not bound by the VA's determination; however, the Ninth Circuit nevertheless concluded the ALJ did set forth a persuasive, specific and valid reason for discounting the VA's disability rating where the ALJ discussed the VA's determinations regarding the claimant's sleep apnea and back pain as being partially disabling, and then elsewhere in the record reviewed Plaintiff's records related to this condition and concluded that sleep apnea had improved and was well controlled by treatment, and the pain was also adequately controlled. *Berry*, 622 F.3d at 1236.

Here, the VA found Plaintiff to be rated at 100 percent for a service-connected disability. (AR 401-02.) The rated disabilities were anxiety disorder (70%), intervertebral disc syndrome (20%), sciatic nerve, neuritis (10%), paralysis of the sciatic nerve (10%). (AR 1109.)

The ALJ stated that she considered the VA disability rating in rendering her decision. (AR 32.) The ALJ did not assign a specific amount of weight to the decision, but it is apparent from the fact that the ALJ acknowledged a 100 percent VA disability rating, that she did not give the rating great weight.

The court finds that under *Berry*, the ALJ did set forth persuasive, specific, valid reasons for not giving the VA disability rating great weight because she thoroughly discussed Plaintiff's asserted impairments elsewhere in the decision, and made various conclusions as to why they were

not as limiting as Plaintiff alleged which are supported by the record. Plaintiff only addresses the mental aspect of the ALJ's findings (ECF No. 11 at 7-8); therefore, the court will focus on the mental impairments as well.

The ALJ reviewed Plaintiff's mental health records, then said that while Plaintiff reported difficulty being around others and with concentration and focus, the majority of her mental status examinations revealed logical thought process, intact memory, fair insight and adequate judgment, good eye contact and cooperation with medical professionals. (AR 28-29.) The ALJ then noted that while Plaintiff discarded many medications, she experienced less anxiety while taking diazepam (valium). (AR 29.) In addition, the ALJ found Plaintiff's activities of daily living were greater than what one would expect of a fully disabled individual, highlighting that she attended school for two years (noting that she switched to online classes when her daughter was born and quit after she failed two classes and did not believe she could hold a job); she took care of her daughter with some help from her husband; and, she had no problems with household chores, engaging in exercise, or feeding, bathing or dressing herself. (AR 30.) The ALJ acknowledged that Plaintiff reported slight difficulty with traveling and moderate difficulty driving and shopping. (AR 30.) The ALJ pointed out that Plaintiff also reported she enjoyed caring for her pets and playing on the computer, and going to concerts and casinos with her husband or friends. (AR 30.)

The ALJ then stated that the record showed some evidence of difficulty with social functioning and concentration, persistence and pace, and as a result, limited Plaintiff to simple tasks and to only occasional interaction with the general public. (AR 30.) The ALJ gave significant weight to the opinion of Robin Sanabria, Ph.D., finding it consistent with the record. (AR 30.) Dr. Sanabria opined Plaintiff would perform better in a job that required little social interaction and was low stress with consistent work requirements. (AR 30.) The ALJ also gave significant weight to the opinion of Joe Dickinson, Ph.D., finding it was also consistent with the record. (AR 31.) Dr. Dickinson opined Plaintiff would do better in a job working mostly by herself, and that she had moderate problems in occupational and social functioning. (AR 31.)

Turning to the psychological consultants, the ALJ gave them significant weight as well. (AR 31-32.) The ALJ pointed out that L. Colsky, M.D. and Phaedra Caruso-Radin, Psy.D., opined

Plaintiff had no restrictions in activities of daily living, but had moderate difficulties with social functioning, concentration, persistence or pace. (AR 31.) They also opined Plaintiff could sustain concentration, persistence and pace for unskilled, simple work; could occasionally interact with the public; and was able to adapt to simple work with limited public contact. (AR 31.) The ALJ found these opinions were consistent with the record as Plaintiff reported she experienced anxiety around others and had some difficulty concentrating, but most of her mental status examinations were normal. (AR 31-32.)

The court has reviewed Plaintiff's medical records, and finds that the ALJ's findings concerning Plaintiff's mental health impairments are in fact supported by the records. Plaintiff was seen for anxiety and depression between 2007 and 2013, but, as the ALJ pointed out, the majority of her mental status examinations noted good eye contact, cooperation with the medical professional, that she was alert and oriented, that she had intact memory and logical thought processes, that she had fair to good insight, and adequate judgment. (AR 326-328 (January 31, 2007), AR 317-19 (February 28, 2007), AR 268-271 (December 28, 2007), AR 250-251 (April 28, 2008), AR 243-44 (May 2, 2008), AR 617-18 (AR 617-18), AR 591-92 (January 12, 2009), AR 585-86 (February 12, 2009), AR 574-75 (March 11, 2009), AR 571 (April 15, 2009), AR 565-66 (June 19, 2009), AR 559 (August 24, 2009), AR 542 (October 27, 2009), AR 517-18 (January 15, 2010), AR 451, 453-54 (April 12, 2010), AR 1189-1195 (June 14, 2013).)

As the ALJ noted, Plaintiff was able to take college classes, though she missed some due to her anxiety, and eventually quit after she failed two classes. (AR 271, 404, 455.) She expressed dissatisfaction with many medications, but did report that valium helped her anxiety. (AR 243, 452, 542, 544, 559, 567, 586.) She expressed social anxiety, having to write things down, and some difficulty concentrating. (AR 270, 271, 244, 453, 454, 457, 458, 577, 1190, 1261.)

Insofar as her activities of daily living are concerned, Plaintiff reported she had no problems with household chores, grooming, feeding, bathing, dressing herself or exercising. (AR 455.) She had moderate difficulty shopping and driving, and slight difficulty with traveling. (AR 455.) She had only a few friends, but spent a lot of time with her daughter's godparents. (AR 456.) She enjoyed caring for her pets and playing on the computer, and going to concerts and casinos

1  with her husband or friends. (AR 456.) She was able to handle her finances. (AR 457.)

2        The ALJ correctly assessed the opinions of Dr. Dickinson and Dr. Sanabria. Dr. Dickinson
3  did opine Plaintiff would probably do better in a job working mostly by herself. (AR 271.)
4  Dr. Sanabria likewise opined Plaintiff would perform better in a job that required little social
5  interaction and low stress. (AR 459.) Dr. Sanabria further stated Plaintiff was not totally
6  unemployable because of her anxiety disorder. (AR 459.)

7        The consulting mental health providers opined Plaintiff had no restrictions on activities of
8  daily living, moderate difficulties in maintaining social functioning and moderate difficulties in
9  maintaining concentration, persistence or pace. (AR 77-79, 89-92.) They further opined she was
10 moderately limited in her ability to interact appropriate with the general public. (AR 79, 92.)

11       In sum, the evidence is consistent with the ALJ's review of the records, and assignment of
12 significant weight to both Plaintiff's examining and consulting mental health providers, which
13 supports the mental health limitations imposed by the RFC of limiting Plaintiff to simple tasks and
14 only occasional interaction with the public.

15       In light of this, the court finds the ALJ did set forth persuasive, specific and valid reasons
16 for discounting the VA's disability rating that are supported by substantial evidence in the record.
17 Therefore, the ALJ did not err insofar as the VA disability rating is concerned.

18 **C. Bookkeeping Clerk, Mail Clerk and Office Helper Occupations**

19     **1. Summary of Argument**

20       Plaintiff argues she lacks the mental capacity to perform the occupation of Bookkeeping
21 Clerk (DOT 214.362-042). (ECF No. 11 at 11.) The VE stated that while the DOT characterized
22 this occupation as SVP 4, the BLS characterized it as unskilled, without identifying the specific
23 publication or statistics she relied on. (*Id.*) Plaintiff relies on *Job Browser Pro*, another job data
24 source, which indicates that the occupation requires SVP 4 (semi-skilled). (ECF No. 11 at 11-12.)
25 Plaintiff contends that the ALJ was not justified in simply relying on the VE's testimony, but was
26 required to seek a reasonable explanation for the deviation between the DOT and Plaintiff's RFC.
27 (*Id.* at 12.)

28       With respect to the Mail Clerk occupation, Plaintiff argues that because she is limited to

sedentary work, she lacks the physical capacity to perform this occupation. The DOT characterizes this occupation as light, but the VE testified that the BLS characterizes it as sedentary, without identifying the specific publication relied upon. (ECF No. 11 at 13.) Plaintiff again relies on *Job Broswer Pro*, which characterizes the occupation as light work. (*Id.*) Therefore, Plaintiff contends that ALJ failed to elicit a reasonable explanation for the deviation between the DOT and Plaintiff's RFC. (*Id.*)

Finally, as to the Office Helper occupation, Plaintiff argues she lacks the physical capacity to perform this occupation as well. (ECF No. 11 at 13.) Plaintiff asserts that the VE stated this occupation was sedentary, but the DOT characterizes it as light, and light work requires an employee to be on his or her feet for approximately six hours out of an eight-hour day. (*Id.* at 13-14.) Plaintiff contends the ALJ failed to recognize the conflict between the DOT and Plaintiff's RFC and elicit a reasonable explanation for the deviation. (*Id.* at 14.)

The Commissioner argues that the ALJ asked the VE to notify the ALJ if the VE's testimony conflicted with the DOT. (ECF Nos. 12/13 at 7-8.) The VE noted that the DOT defined the Bookkeeping position as skilled work, but explained that she was relying on the BLS, which defined this job as unskilled work. (ECF Nos. 12/13 at 8.) The Commissioner contends that while Plaintiff takes issue with the foundation of the VE's testimony, the VE's recognized expertise provides the necessary foundation for her testimony, and the ALJ presents the VE with a hypothetical question reflecting the limitations set forth in the claimant's RFC. (*Id.*). The Commissioner claims that Plaintiff's reliance on *Job Browser Pro* does not take precedence over the VE's opinions. (*Id.* at 9.) The Commissioner further argues that the VE resolved the conflict by explaining that while the DOT defined the Mail Clerk and Office Helper occupations as light work, she relied on the BLS, which defined the jobs as sedentary. (ECF Nos. 12/13 at 8.)

### 2. VE Testimony

With respect to the Bookkeeper occupation, the VE testified: "And here I should point out that the [DOT] lists this as an SVP 4. However, the [BLS] also has this position at the unskilled and sedentary level in the number that I identified." (AR 68.)

As to the Mail Clerk occupation, the VE testified: "Here again I want to point out that the

DOT lists this as light. However, the [BLS] also has this at the sedentary level." (AR 68-69.)

Finally, with respect to the Office Helper occupation, the VE testified: "That is sedentary and SVP 2." (AR 69.)

### 3. ALJ's Decision

The ALJ stated the following concerning the occupations identified by the VE:

> [T]he [ALJ] asked the [VE] whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as:
> (1) Bookkeeping clerk (DOT 214.362-042) which is considered sedentary, unskilled work and which there are approximately 70,800 jobs nationwide,
> (2) Mail clerk (DOT 209.687-026) which is considered sedentary, unskilled work and which there are approximately 70,900 jobs nationwide,
> (3) Office helper (DOT 239.567-010) which is considered sedentary, unskilled work and which there are approximately 103,250 jobs nationwide.
> Pursuant to SSR 00-4p, the undersigned has determined that the [VE's] testimony is consistent with the information contained in the [DOT], with two exceptions. The [VE] testified that the DOT lists bookkeeping clerk as a semi-skilled position with an SVP of 4, but the [BLS] also lists this position as sedentary and unskilled with the number of jobs given above. Additionally, the [VE] testified that the DOT lists mail clerk as a light position, but the [BLS] also lists this position at the sedentary level with the number of jobs given above.
> Based on the testimony of the [VE], the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and [RFC], the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule.

(AR 34.)

### 4. Analysis

At step five, the ALJ considers the claimant's age, education, work experience and RFC to determine if the claimant can perform other work. Again, the RFC is what the claimant can still do despite her limitations. *See Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (citation omitted). The ALJ can rely on VE testimony in making this determination. *Zavalin*, 778 F.3d at 846 (citation omitted); *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). The VE and ALJ rely on the DOT, "a resource complied by the Department of Labor that details the specific requirements for different occupations," which guides the analysis in this regard. *Zavalin*, 778 F.3d at 845 (citation omitted). "[T]he [DOT] refers to 'occupations,' not specific jobs[,]" and

"'occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2-3).

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846; *see also Gutierrez*, 844 F.3d at 807. "The ALJ must ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination." *Id.* (citations omitted); *see also Gutierrez*, 844 F.3d at 807 (citing SSR 00-4P, 2000 WL 1898704, at * 2 (2000)) ("If the [VE's] opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the [VE] to reconcile the conflict before relying on the [VE] to decide if the claimant is disabled"). "The ALJ's failure to resolve an apparent inconsistency may leave ... a gap in the record that precludes [the court] from determining whether the ALJ's decision is supported by substantial evidence." *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1154).

SSR 00-4P provides examples of reasonable explanations for conflicts:
> Evidence from [VEs] can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a [VE's] experience in job placement or career counseling.
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A [VE] or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4p, at * 2-3.

Here, the VE identified a conflict between the VE's testimony and the DOT with respect to the Bookkeeping and Mail Clerk occupations, and explained the deviation from the DOT was

because the VE was relying on occupational data from another source that *was* consistent with Plaintiff's RFC. The ALJ accepted this explanation. Therefore, the ALJ satisfied her duty under *Zavalin* and *Gutierrez* insofar as the Bookkeeping and Mail Clerk occupations are concerned.

Plaintiff also attacks the foundation of the VE's testimony—reliance on the BLS— which the ALJ accepted. The Ninth Circuit has held that "[a]n ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). "A VE's recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

With respect to the Office Helper occupation, Plaintiff is correct that the DOT characterizes it as light work, DOT 239.567-010 (Jan. 1, 2016), and Plaintiff was assigned a sedentary RFC. According to the DOT, the physical demands of this job are in excess of those for sedentary work, and a job rated light requires "walking or standing to a significant degree" or "sitting most of the time but entails pushing and/or pulling of arm or leg controls." *Id.* Light work is similarly defined in the regulations as, *inter alia*, "requir[ing] a good deal of walking or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. 404.1567(b); 20 C.F.R. 416.967(b). "To be considered capable of performing a full range of light work, [the claimant] must have the ability to do substantially all of these activities." *Id.* Social Security Ruling (SSR) 83-10 expands on this definition by stating that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

Neither the VE nor the ALJ recognized the apparent conflict between Plaintiff's sedentary RFC and the characterization of this occupation as light work. While it is possible that the Office Helper occupation could have still qualified as sedentary if it involved sitting most of the time, there was no discussion on this issue, and the ALJ sought no explanation for the deviation between a DOT characterization of an occupation as light work and a sedentary RFC. This was in error under *Zavalin* and *Gutierrez*.

The court finds that this error was harmless because the ALJ properly identified two other

jobs available in significant numbers in the national economy that Plaintiff could perform. *See Massachi v. Astrue*, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007) (it is harmless error if there is no conflict or "if the [VE] provided sufficient support for her conclusion so as to justify any potential conflicts"). In other words, this error is inconsequential to the ultimate non-disability determination. *See Molina v. Astrue*, 674 F.3d 1104, 1115-16 (9th Cir. 2012); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 434 (9th Cir. 1988) (per curiam) (ALJ's error in classifying past relevant work as light was inconsequential where record supported determination claimant was able to perform other light work and was not disabled)).

As a result, Plaintiff's motion should be denied, and the Commissioner's cross-motion should be granted.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion (ECF No. 11), and **GRANTING** the Commissioner's Cross-Motion to Affirm (ECF No. 12).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: July 27, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE